IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

REAGAN PHARMACY, INC.,            )
                                  )
        Plaintiff,                )
                                  )
v.                                )     Civil Action No.   1:13cv848-WHA
                                  )                (wo)
FRED'S STORES OF TENNESSEE, INC., )
                                  )
        Defendant.                )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment, filed by Fred's Stores of Tennessee, Inc. (Doc. #21).

The Plaintiff originally filed a Complaint in this case in the Circuit Court of Geneva County, Alabama on October 18, 2013, bringing state claims for Specific Performance (Count I), Breach of Contract (Count II), and Fraudulent Deceit (Count III).

On November 20, 2013, the Defendants timely removed the case to this court on the basis of diversity jurisdiction, alleging that the individual defendant Wes Maddox ("Maddox"), a resident of the State of Alabama, had been fraudulently joined as a defendant to defeat this court's jurisdiction. The Plaintiff filed a Motion to Remand, which this court denied. Maddox was subsequently dismissed as a Defendant.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and     . . .

the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Donald and Pamela Hagler ("the Haglers") are the co-owners of Plaintiff Reagan Pharmacy, Inc. Donald Hagler is the President of Reagan Pharmacy. Pamela Hagler serves as a pharmacy technician, and also oversees the business, including its finances. Reagan Pharmacy provides prescription drugs, but also sells over-the-counter medication and non-medical goods. It is located in Hartford, Alabama, and at the time in question was the only pharmacy in Hartford.

In September of 2012, Defendant Fred's Stores of Tennessee, Inc. ("Fred's") approached the Haglers about purchasing Reagan Pharmacy, and its goods. The Haglers retained a Certified Public Accountant to represent them in all negotiations with Fred's, and also with two other pharmacies which had approached Reagan Pharmacy about a possible purchase. The Haglers ultimately decided to deal with Fred's.

The Haglers or their representative met with various representatives of Fred's. Ultimately, a document headed "Sale and Purchase Agreement" was written by Fred's and presented to the Haglers, unsigned. The Haglers signed the Sale and Purchase Agreement on February 22, 2013 and sent it to Fred's. The purchase price provision of the Sale and Purchase Agreement is as follows:

> (c) Provided that Seller has complied with all of its conditions and obligations on or before closing, the Purchase Price shall be as follows:
> Prescription Files:   $600,000.
> RX Inventory as provided above.
> OTC Inventory as provided above.

(Doc. #25-2). The Sale and Purchase Agreement sets out a process for conducting an inventory to

3

determine the purchase price of the inventories.   (Doc. #25-2).

Fred's never signed the Sale and Purchase Agreement.

In late March of 2013, Maddox of Fred's visited Reagan Pharmacy.   During this visit Pamela Hagler informed Maddox that two Reagan Pharmacy employees were going to work for Dalton's Pharmacy, which would be opening a competing pharmacy near Reagan Pharmacy.[1] Maddox then made a telephone call, told the Haglers he was going to lunch and would return, left, and never returned.

On April 2, 2013, Reagan Pharmacy sent an email to Pete Crabtree ("Crabtree") of Fred's and asked to have a copy of the contract signed by Fred's.

Crabtree called Donald Hagler and told him that Fred's would not proceed with the contract because of Dalton's Pharmacy opening a competing business.

Reagan Pharmacy presents evidence that requests were made of it by Fred's, such as giving access to Reagan Pharmacy's computers and changing the phone system to answer "Fred's Pharmacy," which it complied with prior to April 2, 2013, but without waiting for Fred's to sign the Sale and Purchase Agreement.   Crabtree has provided an affidavit setting out obligations which were still outstanding at that time.

## IV. DISCUSSION

Fred's moves for summary judgment as to all of Reagan Pharmacy's claims.   The court will begin with the breach of contract claim, and then address the specific performance and fraud claims.

---

[1] Dalton's was one of the other pharmacies with which the Haglers and their CPA had negotiated earlier about a possible sale and purchase.

A. Breach of Contract

Fred's has moved for summary judgment on the basis of the Statute of Frauds. Reagan Pharmacy argues that the lack of a signature does not bar enforcement in this case, and that the Statute of Frauds does not apply to executory contracts. The court will address each of these arguments in turn.

1. Contract Lacks Fred's Signature

Fred's argues that although a written document, the Sale and Purchase Agreement, was sent to Reagan Pharmacy and was signed by that party, because it was not signed by Fred's there was no enforceable contract under the Statute of Frauds and, therefore, no breach of contract. *See, e.g., Bunch v. Garner*, 94 So. 114, 115 (Ala. 1922) (holding that a contract was invalid under the Statute of Frauds where there was a written contract containing blanks for signatures, but there were no signatures in the blanks.)

Reagan Pharmacy does not dispute that the written document was never signed by Fred's. Reagan Pharmacy contends, however, that the blank signature line is the only aspect of the contract which was not completed,[2] and that the rest of the document establishes that no signature was needed because mutuality and assent can be manifested in ways other than a signature, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore*, 751 So. 2d 8 (Ala. 1999) and *Lawler Mobile Homes v. Tarver*, 492 So. 2d 297, 304 (Ala. 1986).

Reagan Pharmacy's argument that the Sale and Purchase Agreement can be enforced without Fred's signature because there is other evidence of mutual assent skips a crucial first step,

---

2 Although Reagan Pharmacy says the document was complete, as noted above, on page 3 of the Sale and Purchase Agreement, the Purchase Price for prescription files was set at $600,000, but the purchase price amounts for RX Inventory and OTC Inventory were not stated in the Sale and Purchase Agreement when signed by Reagan Pharmacy. These amounts had to be based on a "physical inventory (as set forth herein) by an independent inventory firm" within "45 days of the signing of this Agreement." (Doc. #25-2 at p.3).

however, because the law is that "**[u]nless required by a statute to be in writing**, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon." *Kilgore*, 751 So.2d at 11 (emphasis added); *Lawler Mobile Homes*, 492 So. 2d at 304 (analyzing agreement which was signed and not including a discussion of the Statute of Frauds); *see also Mobile Attic, Inc. v. Kiddin' Around of Alabama, Inc.*, 72 So.3d 37, 44 (Ala. Civ. App. 2011) (stating that "unless a contract is required by law to be in writing and signed by the parties, an offeree need not sign the contract to evince his or her mutual assent to it."). Therefore, while some legal authorities cited by Reagan Pharmacy address evidence of assent, they do not support its argument in this case because they do not address whether the contract itself was required by statute to be written. *See, e.g., Fausak's Tire Center, Inc.*, 959 So. 2d 1132, 1140 (Ala. Civ. App. 2006)(standing for the general proposition that a writing must only contain the essential terms of the contract, but the contract in that case was in writing, signed by the party to be charged).

The inapplicability of authorities cited by Reagan Pharmacy is particularly true of authorities such as *Anderson Brothers Chrysler Plymouth Dodge, Inc. v. Hadley*, 720 So. 2d 895, 897 (Ala. 1998) and *Cook's Pest Control, Inc. v. Rebar*, 852 So.2d 730 (Ala. 2002), which involve arbitration agreements, because even though an arbitration agreement must be written, the law does not require that the writing be signed. *See Kilgore*, 751 So.2d at 11; s*ee also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005).

The law in Alabama is that a contract need not be signed by the party against whom it is to be enforced **unless** a signature is required by statute. *Kilgore*, 751 So.2d at 11. Therefore, because the cases Reagan Pharmacy relies on to establish mutual assent do not apply in this case if the Statute of Frauds applies, the court turns to the issue of whether the Statute of Frauds applies to

6

the contract at issue.

## 2. Applicability of the Statute of Frauds

The position of Fred's is that the Statute of Frauds in Ala. Code §7-2-201 applies because the proposed purchase included goods valued at more than $500, as defined under the Alabama Uniform Commercial Code ("UCC"). Ala. Code §7-2-201 provides as follows: "[e]xcept as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties **and signed by the party against whom enforcement is sought or by his authorized agent or broker**." (emphasis added). It is undisputed that the contemplated sale included "goods," or that the price of the goods in the form of inventories, when determined by an independent inventory firm, would have exceeded $500.

In its brief, Reagan Pharmacy does not address the applicability of the Alabama UCC Statute of Frauds. Reagan Pharmacy cites to the general Statute of Frauds in Ala. Code §8-9-2, without citing any basis for applying the general Statute of Frauds. Instead, Reagan Pharmacy merely argues that the Sale and Purchase Agreement was an executed, not executory, contract and therefore not subject to the Statute of Frauds.

The court first notes that under the Alabama UCC, a contract is enforceable even if it is not in writing and signed under an exception which applies to contracts for goods when payment for the goods has been made and accepted or when goods have been received and accepted. Ala. Code §7-2-201(3)(a). Fred's has argued, and the court agrees, that this exception has not been proven in this case.[3]

---

[3] The inapplicability of an exception under Ala. Code §7-2-201 likely is sufficient to entitle Fred's to summary judgment on this claim, but, as discussed below, the court has addressed the arguments regarding the executory nature

7

In response to Reagan Pharmacy's argument that the contract is executed, however, Fred's argues that the Sale and Purchase Agreement was executory, without addressing whether Alabama cases analyzing executory contracts under the general Statute of Frauds can be applied to Alabama UCC contracts. Therefore, given the positions of the parties, the court will assume, without deciding, that Alabama cases analyzing executory contracts within the context of the general Statute of Frauds in Ala. Code §8-9-2 can be applied to contracts for the sale of goods governed by Ala. Code §7-2-201.

Under Alabama contract law, a contract is executory if neither party has fully performed his obligation to the other party. *Ex parte Ramsay,* 829 So. 2d 146, 155 (Ala. 2002). A "contract is executed, and not voided by the State of Frauds, if the plaintiff has fully performed his obligation to the defendant and sues the defendant to obtain the defendant's performance or the completion of the defendant's performance." *Id.* A contract is not executory, but is executed and enforceable even without signature, if the only thing remaining to be done by the defendant is the payment of money. *Mobile Attic, Inc.*, 72 So.3d at 47.

The document in this case, the Sale and Purchase Agreement, sets forth several conditions or requirements to be performed "at" or before the closing of the agreement. For example, the typed document states that a prescription drug inventory and over-the-counter inventory shall be taken at a date within 45 days of the signing of the agreement, and the inventory paid for equally by the Seller and the Purchaser (Doc. #25-2 at ¶2 (d)); that "[a]fter the execution of this Agreement," the Seller shall give the Purchaser access to the computer system (Doc. #25-2 at ¶10); and that the "Agreement and the closing" is contingent upon the Purchaser having a signed Lease with the owner of the real property upon terms acceptable in the Purchaser's sole and absolute discretion.

---

of the contract.

(Doc. #25-2 at ¶17).

Fred's has presented evidence that obligations were outstanding at the time that Fred's informed Reagan Pharmacy at the beginning of April, 2013 that it would not go through with the sale. *See Scott v. Southern Coach and Body Co.*, 197 So.2d 775 (Ala. 1967) (analyzing whether the general Statute of Frauds applied where nothing remained to be done except to pay money prior at the commencement of the suit). Fred's has provided an affidavit by Crabtree in which he highlights the obligations which had not been performed by early April 2013 as follows: 1. the price of the sale was not final and had to be determined; 2. the full inventory of Reagan Pharmacy's prescription and over-the-counter goods had to be performed; 3. Reagan Pharmacy had to remove from its inventory all soiled, discontinued, out-of-date, damaged and/or ruined over-the-counter merchandise and prescription drugs, and remove greeting cards, gift-wrapping items, dry and liquid bulk chemicals, because they were not part of the sale; 4. the parties had to agree on other merchandise to be excluded prior to the inventory; 5. in addition to the inventory, the parties had to agree as to assets to be sold/purchased to be considered as drug store assets; 6. Fred's had to be provided with a DEA Power of Attorney; 7. Reagan Pharmacy was responsible for ensuring that the assets were free and clear from liens and encumbrances; 8. Donald Hagler and other Reagan Pharmacy employees were to submit to a background check and drug screening; 9. a lease of the premises acceptable to Fred's had to be signed; 10. wiring instructions for the transfer of funds had to be provided; and 11. Donald Hagler and all other employees of Reagan Pharmacy were ready to accept employment. (Doc. #28 at pages 7-9).

Reagan Pharmacy has presented Exhibit E, Answer to Interrogatories, to demonstrate that by April 2, 2013, Reagan Pharmacy completed obligations required of it by Fred's. (Doc. #25-6

9

at pages 4-6). Specifically, Reagan Pharmacy states that it sold its bridal registry, reduced its over-the-counter inventory, gave Fred's access to its computers, changed over its phone system, began receiving Fred's mail, signed a contract to lease the building, and sold its Tyler candle display. (Doc. #25-6 at p. 3, 4 and 6). The Exhibit also contains the sentence, "After signing the contract, we did everything we were asked to do by Fred's to make the sale happen." (Doc. #25-6 at p.5).

When given the opportunity to comment on Crabtree's affidavit evidence, Reagan Pharmacy stated in a supplemental brief that Crabtree's Affidavit item #7, the obligation to warrant that the drug store assets were free and clear of encumbrance, was completed and that #6, the DEA Power of Attorney, was not required in the written agreement. Reagan Pharmacy also admits that #10, providing wiring instructions for the transfer of funds, was not completed, although Reagan Pharmacy states that this was not required in the written document.

As to various other obligations set out by Crabtree in his affidavit, however, including setting the purchase price of prescription and over-the-counter assets after the full inventory, Reagan Pharmacy states that these were joint obligations, but does not dispute that these were contract provisions which had not yet been performed. As to the obligation of Reagan Pharmacy in #3 to remove specified goods before the inventory, Reagan Pharmacy states that Fred's did not schedule the inventory, but does not contest that these items had not been removed. (Doc. #31 at p.2). As to the obligations of a background check and drug screening for Donald Hagler, Reagan Pharmacy states that Fred's did not schedule these, but again, does not dispute that they had not occurred. Reagan Pharmacy argues that the lease required by the Sale and Purchase Agreement could not be obtained because of the manner in which the documents were phrased, but does not

contest that the lease described in the Sale and Purchase Agreement had not been provided by Reagan Pharmacy.

In view of Reagan Pharmacy's concession that some obligations of both parties had not been performed, the conclusory statement in the Answers to Interrogatories that Reagan Pharmacy had done all it was asked to do by Fred's to make the sale happen is not sufficient to create a question of fact as to whether all of the outlined obligations of the Sale and Purchase Agreement had been performed. The evidence is that there were obligations remaining to be performed by both parties in early April 2013, other than the payment of money.

As stated earlier, under Alabama law a contract is executory if neither party has fully performed his obligations to the other party. *See Ramsay*, 829 So. 2d at 155. Therefore, even assuming, without deciding, that the analysis applies to Alabama UCC Statute of Frauds cases, the court concludes that the agreement in this case was executory, not executed, so that the relevant Statute of Frauds applies. Furthermore, no statutory exception to the requirement of a signature "by the party against whom enforcement is sought" in Ala. Code §7-2-201 has been proven. Accordingly, the court concludes that the agreement which was not signed by Fred's is not enforceable under the Statute of Frauds, and that summary judgment is due to be GRANTED as to the breach of contract claim.

B. Specific Performance

Fred's argues that Reagan Pharmacy's alternative requested relief for specific performance is also unavailing because the proposed agreement was never enforceable, and Fred's was never vested with the ability to seek specific performance, so there is no mutuality of remedy, citing *Ex*

*parte A.B.*, 793 So.2d 784 (Ala. 2000).   Reagan Pharmacy has not responded to this argument, contending only that the Sale and Purchase Agreement is valid and enforceable and subject to being specifically performed.   Having concluded that the contract is not enforceable under the Statute of Frauds, the court similarly concludes that it cannot be specifically enforced.   *See, e.g., Webster v. Aust*, 628 So.2d 846 (Ala. Civ. App. 1993) (stating "[e]quity will not specifically enforce an agreement which falls within the statute of frauds.").   Summary judgment is, therefore, due to be GRANTED as to this claim.

### C.  Fraudulent Deceit

Fred's contends that there is no evidence to indicate that Reagan Pharmacy did anything to its detriment in relying on Maddox's representation that he was going to lunch and would return, which is required to prove a claim for fraudulent deceit.

Reagan Pharmacy does not respond to this argument, apparently abandoning this claim. *See Road Sprinkler Fitters Local Union N. 669 v. Indep. Sprinkler Corp*., 10 F.3d 1563, 1568 (11th Cir.1994).   The court finds no question of fact as to reliance.   *See Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004).

Fred's has also moved for summary judgment as to punitive damages and damages for mental anguish.[4]   Reagan Pharmacy has not responded to this aspect of the motion, and the court finds no question of fact which precludes summary judgment on those elements of damage.

Summary judgment is due to be GRANTED as to this claim.

---

4  Mental anguish is not a claim in the Complaint, but it listed as an item of damage in the Answers to Interrogatories. (Doc. #25-6 at p.5).   It appears that the punitive damages and mental anguish are claimed as damages for fraud.

12

## V. CONCLUSION

The court finds that the written document headed "Sale and Purchase Agreement" at issue in this case is not enforceable under §7-2-201 of the Alabama Uniform Commercial Code because it was a contract for the sale of goods for the price of over $500 and was not "signed by the party against whom enforcement is sought," Fred's, and there is no genuine issue of material fact as to any exception.

The court further finds that, even if the general Alabama Statute of Frauds, Ala. Code §8-9-2, and/or case law applying that statute, applied to this case, the document is unenforceable as a contract because it was not signed by Fred's and there were obligations of both parties yet to be performed, making it executory, and not executed.

For the reasons discussed, and also because there is no evidence of detrimental reliance on the alleged misrepresentations on which the third count is based, there is no genuine dispute as to any material fact and Fred's is entitled to judgment as a matter of law on all claims.

It is hereby ORDERED that the Motion for Summary Judgment (Doc. #21) is GRANTED and this case is dismissed with prejudice.

A separate Final Judgment will be entered as to all counts in the Complaint, consistent with this Memorandum Opinion and Order.

Done this 5th day of December, 2014.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE